639 So.2d 606 (1994)
LEVIN, MIDDLEBROOKS, MABIE, THOMAS, MAYES & MITCHELL, P.A., et al., Appellants,
v.
UNITED STATES FIRE INSURANCE COMPANY, Appellee.
No. 82649.
Supreme Court of Florida.
June 30, 1994.
James R. Green of Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, Pensacola, for plaintiffs-appellants.
Charles Cook Howell, III of Howell, O'Neal & Johnson, Jacksonville, for defendant-appellee.
*607 C. Rufus Pennington, III of Margol & Pennington, P.A., Jacksonville, amicus curiae for the Academy of Florida Trial Lawyers.
OVERTON, Justice.
We have for review Levins, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. United States Fire Insurance Co., No. 92-2984 (11th Cir. Oct. 29, 1993) (order certifying question), in which the Eleventh Circuit Court of Appeals found that it is unclear whether Florida courts would extend the "litigation privilege" to actions based on tortious interference with a business relationship and certified the following question to this Court:
WHETHER CERTIFYING TO A TRIAL COURT AN INTENT TO CALL OPPOSING COUNSEL AS A WITNESS AT TRIAL IN ORDER TO OBTAIN COUNSEL'S DISQUALIFICATION, AND LATER FAILING TO SUBPOENA AND CALL COUNSEL AS A WITNESS AT TRIAL, IS AN ACTION THAT IS ABSOLUTELY IMMUNE FROM A CLAIM OF TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP BY VIRTUE OF FLORIDA'S LITIGATION PRIVILEGE.
Id. at 8. We have jurisdiction pursuant to article V, section 3(b)(6), of the Florida Constitution. For the reasons expressed, we answer the certified question in the affirmative.
The stipulated facts of this case are as follows. A personal injury action was filed against Daniel Ornamental Iron Company (Daniel Ornamental). United, the insurance company for Daniel Ornamental, failed to settle the case within its primary policy limits of $500,000, and the case proceeded to trial, which resulted in a judgment against Daniel Ornamental in the amount of $863,287. Thereafter, Morrison Assurance Company (Morrison Assurance), Daniel Ornamental's excess insurance carrier, retained Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. (Levin firm) on a contingency fee basis to bring a bad faith action against United for its failure to settle the personal injury suit within the policy limits. The Levin firm had also represented the plaintiff in the underlying personal injury case against Daniel Ornamental.
In answering interrogatories in the bad faith litigation, Morrison Assurance listed Lefferts L. Mabie, an attorney with the Levin firm, as one of several people who had knowledge of United's alleged bad faith. After receiving the answers to the interrogatories, United moved to disqualify Mabie and the Levin firm as Morrison Assurance's attorneys. In moving to disqualify Mabie and the Levin firm, United certified to the trial court that it would be calling Mabie as a witness at trial. As a result of United's certification, the trial judge disqualified Mabie and the Levin firm as counsel for Morrison Assurance. United, however, never subpoenaed Mabie for trial, never called him as a witness at trial, and never notified the court that it would not be calling him as a witness. At trial, a final judgment was entered in favor of Morrison Assurance against United in the amount of $638,237.
In this action, the Levin firm sued United in federal court for tortious interference with a business relationship, alleging that United intentionally disqualified Mabie to prevent the Levin firm from representing Morrison Assurance. United moved to dismiss this action on the grounds that its actions in the bad faith litigation were protected by the absolute immunity afforded to statements or actions taken during a judicial proceeding. The federal district court granted United's motion to dismiss and entered judgment in United's favor. On appeal, the Eleventh Circuit Court of Appeals certified the foregoing question to this Court, finding that it is unclear whether Florida courts would extend this type of immunity to a tortious interference with a business relationship action that was based on misconduct in a judicial proceeding.
In answering the certified question, we first examine the origins of the immunity afforded to statements or actions taken during a judicial proceeding. Traditionally, defamatory statements made in the course of judicial proceedings are absolutely privileged, no matter how false or malicious the statements may be, so long as the statements are relevant to the subject of inquiry. Fridovich *608 v. Fridovich, 598 So.2d 65 (Fla. 1992). Consequently, the torts of perjury, libel, slander, defamation, and similar proceedings that are based on statements made in connection with a judicial proceeding are not actionable. Wright v. Yurko, 446 So.2d 1162 (Fla. 5th DCA 1984). The immunity afforded to statements made during the course of a judicial proceeding extends not only to the parties in a proceeding but to judges, witnesses, and counsel as well. Fridovich; Cox v. Klein, 546 So.2d 120 (Fla. 1st DCA 1989); Wright.
This absolute immunity resulted from the balancing of two competing interests: the right of an individual to enjoy a reputation unimpaired by defamatory attacks versus the right of the public interest to a free and full disclosure of facts in the conduct of judicial proceedings. Fridovich. In determining that the public interest of disclosure outweighs an individual's right to an unimpaired reputation, courts have noted that participants in judicial proceedings must be free from the fear of later civil liability as to anything said or written during litigation so as not to chill the actions of the participants in the immediate claim. Id.; Sussman v. Damian, 355 So.2d 809 (Fla. 3d DCA 1977). Although the immunity afforded to defamatory statements may indeed bar recovery for bona fide injuries, the chilling effect on free testimony would seriously hamper the adversary system if absolute immunity were not provided. Wright.
The issue of whether the absolute immunity afforded to acts of slander, libel, and perjury should be extended to other tort claims such as that at issue here  tortious interference with a business relationship  has not been previously addressed by this Court. We note, however, that at least one district court has extended this immunity to other claims arising from alleged tortious conduct occurring during the course of litigation. See Ponzoli & Wassenberg, P.A. v. Zuckerman, 545 So.2d 309 (Fla. 3d DCA) (tortious claim of extortion, which was based on the alleged fraud and delaying tactics of counsel in the course of litigation, was improper because the conduct at issue was committed during the course of a judicial proceeding and was immune from civil liability in any subsequent proceeding), review denied, 554 So.2d 1170 (Fla. 1989). Likewise, in Sailboat Key, Inc. v. Gardner, 378 So.2d 47 (Fla. 3d DCA 1979), the district court stated that "`it may be said that injurious falsehood, which is a tort that never has been greatly favored by the law, is subject to all the privileges recognized both in cases of personal defamation and in those of other types of interference with economic advantage.'" Id. at 49 (emphasis added) (footnote omitted) (quoting William L. Prosser, Handbook of the Law of Torts § 128, at 924 (4th ed. 1971)). Moreover, although we did not directly address this issue in Fridovich, we did state in that case that absolute immunity "`arises immediately upon the doing of any act required or permitted by law in the due course of the judicial proceedings.'" 598 So.2d at 66 (alteration in original) (quoting Ange v. State, 98 Fla. 538, 541, 123 So. 916, 917 (1929)).
In balancing policy considerations, we find that absolute immunity must be afforded to any act occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement or other tortious behavior such as the alleged misconduct at issue, so long as the act has some relation to the proceeding. The rationale behind the immunity afforded to defamatory statements is equally applicable to other misconduct occurring during the course of a judicial proceeding. Just as participants in litigation must be free to engage in unhindered communication, so too must those participants be free to use their best judgment in prosecuting or defending a lawsuit without fear of having to defend their actions in a subsequent civil action for misconduct.
This does not mean, however, that a remedy for a participant's misconduct is unavailable in Florida. On the contrary, just as "[r]emedies for perjury, slander, and the like committed during judicial proceedings are left to the discipline of the courts, the bar association, and the state," Wright, 446 So.2d at 1164, other tortious conduct occurring during litigation is equally susceptible to that same discipline. Clearly, a trial judge has the inherent power to do those things necessary *609 to enforce its orders, to conduct its business in a proper manner, and to protect the court from acts obstructing the administration of justice. In particular, a trial court would have the ability to use its contempt powers to vindicate its authority and protect its integrity by imposing a compensatory fine as punishment for contempt. South Dade Farms, Inc. v. Peters, 88 So.2d 891 (Fla. 1956).
Accordingly, we answer the certified question in the affirmative and return this case to the United States Court of Appeals for the Eleventh Circuit.
It is so ordered.
GRIMES, C.J., KOGAN and HARDING, JJ., and McDONALD, Senior Justice, concur.
SHAW, J., dissents.