**Lois HARTMAN, Plaintiff**

v.

**ASSET ACCEPTANCE CORPORATION, Defendant**

**No. 1:03CV113.**

United States District Court, S.D. Ohio, Western Division.

Sept. 29, 2004.

0c17c

Edward Alan Icove, Icove Legal Group Ltd, Cleveland, OH, Steven Charles Shane, Bellevue, KY, for Plaintiff.

Jeffrey Charles Turner, Boyd W. Gentry, Surdk Dowd & Turner Co. LPA, Dayton, OH, for Defendant.

### MEMORANDUM AND ORDER

BECKWITH, Chief Judge.

Before the Court are the following pleadings:

Defendant's motion for judgment on the pleadings (Doc. 8);

Defendant's motion for a stay pending ruling on motion for judgment on the pleadings (Doc. 9);

Defendant's motion to strike class action allegations (Doc. 20);

Plaintiff's motion for class certification (Doc. 25);

Plaintiff's motion for partial summary judgment (Doc. 51); and

Defendant's motion for summary judgment (Doc. 52).

*Factual Background*

Plaintiff Lois Hartman alleges that, at some unknown time in the past, she opened a MasterCard credit card account with Citibank. She denies currently owing anything on that account. (Am.Compl.¶ 5–6)[1] Defendant Asset Acceptance Corporation purchases defaulted or "written off" accounts from other companies at a sub-

---

1. All references to "Am. Compl." are to Plaintiff's Amended Complaint in this action (Doc. 46).

stantial discount (here, less than ten cents on the dollar), and then attempts to collect on the account from the original debtor. (Doc. 48, Asset's Answer, ¶3; Everly Depo. p. 32–33)

Asset purchased Hartman's credit card account from Citibank, along with a number of other Citibank accounts. Asset then filed a lawsuit against Hartman in an Ohio state court, seeking a judgment against her in the amount of $2,542.32, plus accrued interest of $4,758.57. (Am. Compl., Exhibit A). Asset's branch manager, Charles Hilson, signed an affidavit which was attached to Asset's state court complaint, claiming that Asset was a "holder in due course" of the Citibank credit card account. (Am. Compl. Exhibit B) The ultimate result of Asset's state court action is not clear from the pleadings; a discussion during the plaintiff's deposition suggests that Asset voluntarily dismissed its suit. (Doc. 31, Hartman Depo., p. 28–29)

Hartman then filed this lawsuit against Asset under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq, and the Ohio Consumer Sales Practices Act, Ohio Rev.Code § 1345.01 et seq. Her sole basis for relief is Hilson's statement that Asset was a "holder in due course." Hartman alleges this statement is false, and violates several provisions of the FDCPA and the OCSPA.

Asset initially moved for judgment on the pleadings (Doc. 8), primarily arguing that common law witness immunity protects the Hilson affidavit, and Asset, from any liability to Hartman. After Hartman filed a motion for class certification (Doc. 25), the parties filed cross motions for summary judgment.

The parties do not dispute that Asset is a "debt collector," that Hartman is a "consumer," or that the debt at issue is a "consumer debt" for purposes of the FDCPA. Asset does not dispute, at least for summary judgment purposes, that its "holder in due course" statement is incorrect. Asset argues that whether or not the statement is incorrect is immaterial to liability under the statute. Hartman, on the other hand, seeks partial summary judgment that the statement in fact is false, and that Asset is therefore liable under the statute.

Asset's motion for summary judgment (Doc. 51) also argues, as did its motion for judgment on the pleadings, that the affidavit is protected by absolute witness immunity or by Asset's litigation privilege. Asset suggests that the FDCPA does not apply to the affidavit, which was attached to a pleading filed in the state court. Even if the statute applies, Asset argues that Hartman cannot sustain her claim because Hartman was not "deceived, misled or intimidated" within the meaning of the statute.

Hartman's motion (Doc. 52) argues that the FDCPA applies to any conduct, both in and out of court, falling within the statutory definitions. Hartman correctly notes that the FDCPA imposes strict liability, including statutory damages in the absence of actual damages, and that the only express statutory defense is "bona fide error" as defined in 15 U.S.C. § 1692k(c).

## ANALYSIS

### A. *Summary Judgment Standards.*

The standards for summary judgment are well established. Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party opposing a properly supported summary

judgment motion " 'may not rest upon the more allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.' " *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). The Court is not duty bound to search the entire record in an effort to establish a lack of material facts. *Guarino v. Brookfield Township Trs.*, 980 F.2d 399, 404 (6th Cir.1992); *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir.1989), *cert. den.*, *Superior Roll Forming Co. v. InterRoyal Corp.*, 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990). Rather, the burden is on the non-moving party to "present affirmative evidence to defeat a properly supported motion for summary judgment...," *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir.1989), and to designate specific facts in dispute. *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The court construes the evidence presented in the light most favorable to the non-movant and draws all justifiable inferences in the non-movant's favor. *United States v. Diebold Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

The court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. The court must assess "whether there is the need for trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. 2505. "If the evidence is merely colorable, ..., or is not significantly probative, ..., the court may grant judgment." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted). The Supreme Court has held:

> The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoicably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict...

*Id.* at 252, 106 S.Ct. 2505. Hence the " 'mere possibility' " of a factual dispute will not suffice. *Mitchell v. Toledo Hospital*, 964 F.2d 577, 582 (6th Cir.1992), quoting *Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 863 (6th Cir.1986).

Summary judgment is not appropriate simply because the weight of the evidence favors the moving party. *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 472, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). The issue of material fact required "to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Cities Serv. Co., supra*, 391 U.S. at 288–89, 88 S.Ct. 1575.

Although summary judgment must be used with extreme caution since it operates to deny a litigant his day in court, *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir.1979), *cert. dismissed*, 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979), the United States Supreme Court has stated

that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.' " *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citations omitted).

The Court notes here that, although Plaintiff has pending a motion for class certification, the Court may first address the merits of the summary judgment motion. This is particularly true where early resolution of the motion would save the parties and the court from needless and costly further litigation. *Thompson v. County of Medina,* 29 F.3d 238, 241 (6th Cir.1994). Given the nature of the violation alleged here (which caused Plaintiff no actual damage), and the record in this case, the Court finds that this is an appropriate case in which to address the motion for summary judgment first.

## B. *The Fair Debt Collection Practices Act.*

█ Congress first enacted this statute in 1977 "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The Sixth Circuit has noted that the Act is "extraordinarily bread" and must be enforced as written, even when eminently sensible exceptions are proposed in the face of innocent and/or de minimis violations. See *Frey v. Gangwish,* 970 F.2d 1516, 1521 (6th Cir.1992). The Court must evaluate the defendant's conduct under the "least sophisticated consumer" test, and objectively determine whether that consumer would be misled by

the defendant's statement. *Smith v. Transworld Systems, Inc.,* 953 F.2d 1025, 1029 (6th Cir.1992).

### 1. *Absolute Witness Immunity.*

█ Asset's primary argument is that Hilson's affidavit, even if false, is not actionable. Asset argues it is immune from any action for damages based upon Hilson's testimony in a judicial proceeding. Asset cites two recent district court decisions holding defendants immune from liability under the FDCPA for statements contained in affidavits filed in state court. See, *Etapa v. Asset Acceptance Corporation* (unreported), E.D. Kentucky Case No. 03–86–KSF, Order dated April 29, 2004; and *Beck v. Codilis & Stawiarski, P.A.,* 2000 WL 34490402, 2000 U.S. Dist. LEXIS 22440 (N.D.Fla., Dec. 26, 2000).

*Etapa* is essentially identical to this case. Asset filed a collection action in Kentucky state court supported by an affidavit stating that Asset was a "holder in due course" of Etapa's credit card debt. Etapa then sued Asset under the FDCPA. The district court granted Asset's motion for judgment on the pleadings, holding that the FDCPA does not abrogate common law witness immunity. *Etapa* relied on the analysis in *Briscoe v. LaHue,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983), which held that trial witnesses are absolutely immune from liability under 42 U.S.C. § 1983 based upon their trial testimony. The Supreme Court found that Congress did not intend to abrogate the common law doctrine immunizing a trial witness from subsequent tort liability when Congress passed the Civil Rights Acts in 1871.

*Beck* involved an FDCPA claim against a lender's attorney, who had filed an affidavit in the lender's foreclosure action attesting to the hours spent on the foreclosure suit, and the hourly rate charged to

the lender. In fact, the attorney charged the lender a flat fee for the foreclosure. The district court held that witness immunity absolutely protected the attorney from the borrowers' FDCPA claims, and that any sanction for the false affidavit must come from the state bar, not the FDCPA.

Plaintiff on the other hand cites *Todd v. Weltman, Weinberg & Reis Co., LPA* (unreported), S.D. Ohio Case No. C–1–03–171 (Dlott, J.), Order of August 4, 2004. There, the district court rejected the witness immunity argument and denied a motion for judgment on the pleadings in an FDCPA action against attorneys who signed form affidavits filed in state garnishment proceedings. The plaintiffs alleged that the affidavits falsely stated the attorney had "good reason to believe" that the debtor had non-exempt assets subject to garnishment. The district court noted that the common law did not immunize a "complaining" witness from all liability, as such a witness could be liable in tort if he acts maliciously or without probable cause.

Many other courts have concluded that the FDCPA applies to "testimonial" documents and to pleadings filed in state court actions. See, e.g., *Miller v. Wolpoff & Abramson*, 321 F.3d 292 (2nd Cir.2003) [verified complaint filed in state collection action by defendant attorneys subject to FDCPA]; *Gearing v. Check Brokerage Corporation*, 233 F.3d 469 (7th Cir.2000) [debt collector's complaint, incorrectly alleging it was "subrogated" to rights of creditor, subject to FDCPA]; *Tomas v. Bass & Moglowski, P.C.*, 1999 U.S. Dist. LEXIS 21533 (W.D. Wisc., June 29, 1999) [summons and complaint filed in state replevin action subjected attorney to FDCPA liability]; *Campos v. Brooksbank*,

120 F.Supp.2d 1271 (D.C.N.M.2000) [attorney's fee affidavit and deposition notice subject to FDCPA]; *Jacquez v. Diem Corp.*, 2003 U.S. Dist. LEXIS 8333 (D.C.Ariz. February 20, 2003) [writ of garnishment signed by debt collector subject to FDCPA]. None of these cases discuss the application of witness immunity to the FDCPA.

Congress legislates against a background of common-law adjudicatory principles. Where a common law principle is well established, ". . . the courts may take it as given that Congress has legislated with an expectation that the principle will apply except when a statutory purpose to the contrary is evident." *Astoria Fed. Savings & Loan Assn. v. Solimino*, 501 U.S. 104, 108, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991). Congressional findings concerning the need for the FDCPA note that "Existing laws and procedures for redressing [abusive debt collection practices] are inadequate to protect consumers." The legislative history does not refer to any specific abusive practices in the context of state court collection litigation, other than to debt collection lawsuits filed in inconvenient venues.[2]

*Briscoe*, cited in both *Etapa* and *Beck*, dealt with a police officer's immunity from § 1983 liability for his allegedly false testimony in a prior criminal trial. Trial witness immunity from defamation suits was well established at common law when the 1871 Civil Rights Act was passed. The Court held that Congress did not intend to abrogate witness immunity for police officers by use of the phrase "under color of state law." After *Briscoe*, the Supreme Court held that a "complaining witness" does not have absolute immunity from § 1983 liability in *Malley v. Briggs*, 475

---

**2.** The FDCPA specifically requires such suits to be filed where the consumer resides or the debt was incurred, to prohibit the practice of

filing collection lawsuits in venues far removed from the consumer. See 15 U.S.C. § 1692i(a).

U.S. 335, 340–341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). There, the Court held a police officer's affidavit in support of an arrest warrant was entitled to only qualified, not absolute immunity, because at common law a complaining witness was not immunized from tort liability for malicious prosecution. And, in *Kalina v. Fletcher*, 522 U.S. 118, 127, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997), the Court held that a prosecutor who executed a fact certification for an arrest warrant was acting as a complaining witness, not a prosecutor, and not entitled to absolute immunity. Finally, in *Wyatt v. Cole*, 504 U.S. 158, 164–166, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992), the Court held that private parties who filed a replevin action under a state law that was later held unconstitutional were not immune from § 1983 liability. The Court noted that absolute immunity for private individuals was not firmly rooted in common law, and was not supported by the strong policy reasons underlying judicial, prosecutorial and trial witness immunity. Therefore, no inference arose that Congress intended to incorporate private party absolute tort immunity into the Civil Rights Act.

Sixth Circuit decisions follow this reasoning. See, e.g., *Vakilian v. Shaw*, 335 F.3d 509 (6th Cir.2003) [special agent for state Attorney General's office not absolutely immune from § 1983 or § 1985 liability for testimony in ex parte hearing]; and, *Vector Research, Inc. v. Howard & Howard P.C.*, 76 F.3d 692 (6th Cir.1996) [attorneys who accompanied federal marshal on premises search pursuant to ex parte order not immune from § 1985 liability].

The FDCPA, as noted above, is a broad remedial statute, regulating conduct far broader than that which might lead to liability for defamation or similar common law torts. Congress clearly intended to regulate the "process" of debt collection, and nothing in the statute exempts testimonial documents filed by a debt collector. Moreover, recognition of an absolute witness immunity as defendant urges would be contrary to the statutory purpose of the FDCPA. The Sixth Circuit has made it abundantly clear that the courts must apply unambiguous statutes as written, even when that application may lead to unintended or anomalous results. See, *Olden v. LaFarge Corp.*, 383 F.3d 495, 2004 Fed. App. 0296P at \*\*9–11 (6th Cir.2004). Congress used very broad language in the FDCPA's proscriptions on debt collection practices. Given the broad language of the statute, and the absence of any firmly rooted absolute immunity for a private plaintiff initiating a civil lawsuit with an allegedly false affidavit, the Court cannot conclude that Asset is absolutely immune from FDCPA liability based on the common law witness immunity doctrine.

2. *Litigation Privilege.*

█ Asset next argues that the affidavit of its agent, filed in state court, is absolutely privileged. The litigation privilege differs from the witness immunity doctrine. As noted in *Briscoe*, witness immunity fosters the truth-finding judicial function within the context of the adversarial process. The litigation privilege, on the other hand, broadly protects all actors in the course of judicial proceedings from subsequent liability for acts and conduct related to the proceeding. "While the imposition of an absolute privilege in judicial proceedings may prevent redress of particular scurrilous and defamatory allegations that tend to harm the reputation of the person defamed, a contrary rule, in our view, would unduly stifle attorneys from zealously advancing the interests of their clients in possible violation of the Code of Professional Responsibility, and would clog court dockets with a multitude of lawsuits

based upon alleged defamatory statements made in other judicial proceedings." *Surace v. Wuliger,* 25 Ohio St.3d 229, 235, 495 N.E.2d 939 (1986). While the privilege historically was raised to defeat defamation suits, the modern version has broadened in most states to include all kinds of tort liability. See, e.g., *Levin v. United States Fire Ins. Co.,* 639 So.2d 606 (Fla.1994), cited in *Beck* (Florida law); and, *Heavrin v. Nelson,* 384 F.3d 199, 2004 Fed.App. 0312P (6th Cir.2004) (Kentucky privilege bars claims for fraud and perjury).

Does the FDCPA abrogate this firmly rooted state law privilege? As originally passed, the statute excluded "any attorney-at-law collecting a debt as an attorney on behalf of and in the name of a client" from the definition of "debt collector." Pub.L. 95–109, sec 803(6)(F). Plainly Congress intended *not* to regulate debt collection litigation when conducted by attorneys. But Congress repealed the attorney exemption in 1986 without creating a litigation or litigation-related exception for attorneys OR for traditional debt collectors.

In *Heintz v. Jenkins,* 514 U.S. 291, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995), the Supreme Court unanimously held that the Act applies to lawyers' "litigation activities." There, a bank's attorney filed suit against a debtor and, during the course of the litigation, sent a letter to the debtor's attorney trying to settle the case. The complaint and the letter both erroneously sought recovery of an amount for insurance coverage which turned out to be beyond the scope of the original loan agreement. The debtor then sued the attorney under several provisions of the FDCPA. The Seventh Circuit held the attorney was subject to the FDCPA, disagreeing with the Sixth Circuit's contrary opinion in *Green v. Hocking,* 9 F.3d 18 (6th Cir.1993).

The Supreme Court affirmed the Seventh Circuit, rejecting the rationale set forth in *Green* that subjecting litigation-related activities to FDCPA liability would create intolerable conflicts. If an attorney can be liable for "litigation activities" which can include filing an affidavit, then certainly Asset is subject to the same liability.

Other federal remedial statutes have been found to implicitly abrogate a state law litigation privilege. See, e.g., *Nix v. O'Malley,* 160 F.3d 343 (6th Cir.1998), holding that defendant and his attorneys were not immune from civil liability under the federal wiretap statute (18 U.S.C. § 2510) and the similar Ohio statute, for attaching a transcript of the intercepted communication to a summary judgment motion filed in underlying state court litigation. Rejecting an absolute "litigation privilege" in this context, the Sixth Circuit held that nothing on the face of the statute could be read to immunize the defendants from liability simply because the "publication" was in a pleading filed in court. And see, *Rosania v. Taco Bell of America,* 303 F.Supp.2d 878 (N.D.Ohio 2004), holding that the defendant/employer's counterclaim filed in plaintiff's FMLA suit could constitute actionable retaliation under the FMLA, and rejecting the argument that the absolute litigation privilege applied to the filing of the counterclaim. See also, *Steffes v. Stepan Co.,* 144 F.3d 1070 (7th Cir.1998), where plaintiff filed a retaliation lawsuit based upon the defendant's conduct during discovery of the plaintiff's companion Title VII/ADA suit. The Seventh Circuit rejected defendant's contention that an absolute litigation privilege applied to its discovery conduct, because recognizing such a broad privilege could interfere with the policies underlying Title VII and ADA. A state privilege must yield in such circumstances. See, e.g., *Martinez v. California,* 444 U.S. 277, 284, n. 8, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980) [state

immunity law does not bar federal § 1983 claim]. And see *Irwin v. Mascott,* 112 F.Supp.2d, 937, 962–63 (N.D.Cal.2000) [California litigation privilege not applicable to FDCPA claim].

■ The Court concludes that the state law "litigation privilege" does not bar plaintiff's FDCPA complaint arising out of an affidavit filed in state court.[3]

### 3. *FDCPA Liability.*

Defendant initially suggests that the FDCPA does not apply at all to "documents filed in civil actions," citing *Vega v. McKay,* 351 F.3d 1334 (11th Cir.2003). The Court rejects this argument. *Vega* addressed whether an "initial communication" for purposes of § 1692e(11) includes a "pleading." That question is not relevant here. Moreover, *Vega* relied on an 1988 FTC opinion that a legal action is not a "communication" under the FDCPA. That opinion has been superceded; see March 31, 2000 FTC Formal Advisory Opinion, finding that after *Heintz v. Jenkins* a lawsuit can be a "communication." The Court also notes that Congress amended § 1692e(11) in 1996, to explicitly state that a "formal pleading filed in a legal action" is exempt from that paragraph's requirements. There would be no need for this amendment if pleadings were already exempted from all parts of the Act.

Plaintiff alleges that Hilson's affidavit violates sections 1692d, 1692e(2), e(6) and e(12). Each is discussed below.

■ Section 1692d prohibits conduct when its "natural consequence" is to "harass, oppress, or abuse" a debtor. The section lists several examples of conduct intended to be covered, including threats of violence, use of obscene or profane language, causing a phone to repeatedly ring with intent to annoy, abuse or harass a person, and so forth. The Court finds that Asset's sworn affidavit, stating that it is a "holder in due course," is not the kind of conduct covered by § 1692d as a matter of law. The examples listed in § 1692d make this plain. Moreover, the "natural consequence" of an affidavit filed in a lawsuit is to bring the issue to the court for resolution, not to "harass, oppress, or abuse" the defendant. Summary judgment is therefore granted on this claim.

Section 1692e generally prohibits false, misleading or deceptive representations in connection with debt collection. The Court must apply the objective "least sophisticated consumer" standard in order to determine if the statement was deceptive or misleading. In *Lewis v. ACB Business Services, Inc.,* 135 F.3d 389 (6th Cir.1998), the debt collector's letter was "signed" by a non-existent person. The Sixth Circuit rejected the argument that the use of an alias was deceptive, even though the statement was undeniably false. The Court noted that the false statement did not cause any prejudice or harm to the Plaintiff, and that use of an alias was not deceptive within the statutory meaning.

■ *Subsection e(2)* prohibits the false representation of "the character, amount, or legal status" of a debt. Here, the challenged representation is strictly one of law, a representation that would have no meaning to the "least sophisticated consumer"— at least until that consumer consulted with an attorney. (Plaintiff testified that when she received the state court complaint, she read it but did not understand the phrase "holder in due course." Only after she

---

**3.** Nor can the Court discern any federal common law litigation privilege that could apply here. Indeed, *Heintz v. Jenkins* cuts against the existence of any such federal privilege, as the Court explicitly held that litigation related conduct is subject to the FDCPA.

obtained counsel did her lawyer explain it to her. Indeed, Asset's own Vice President, Deborah Everly, testified that she didn't even know what the phrase meant. Everly Depo., p. 73–76)

Assuming the statement was per se false (which Asset does not admit nor address in its pleadings), is that alone sufficient to impose FDCPA liability? The Seventh Circuit concluded that a literally false statement in a collection letter violates the FDCPA as a matter of law. See, *Avila v. Rubin,* 84 F.3d 222, 227 (7th Cir.1996). And, after *Lewis,* where a per se false statement was apparently not enough without "deception," the Sixth Circuit has recently suggested in an unpublished opinion that an "incorrect" representation in a collection letter is sufficient under section 1692e(2) to withstand a motion to dismiss, without discussing its deceptive or misleading character. See, *Savage v. Hatcher,* 109 Fed.Appx. 759, 761, 2004 U.S.App. LEXIS 19210 at *6 (6th Cir., September 7, 2004).

While there is some doubt as to whether Congress really intended § 1692e to apply to statements and representations not made directly to the debtor,[4] the vast majority of courts have concluded that the broad statutory language applies to documents filed in legal proceedings. See cases cited *infra.* at p. 9–10. The Court therefore must conclude that defendant's representation that it is a "holder in due course" of plaintiff's debt is actionable under § 1692e(2) as a representation concerning the "legal status" of the debt, if (1) the representation is in fact false, and (2) defendant cannot establish its entitlement to the bona fide error defense set forth in § 1692k(c).

■ Plaintiff also alleges that defendant's representation violates § 1692e(6)(A), prohibiting a false representation or implication that "a sale, referral, or other transfer of any interest in a debt shall cause the consumer to … lose any claim or defense to payment of the debt." The Court is unable to locate any cases interpreting or applying this section of the statute. The Court finds that its terminology is intended to prohibit the representation, or threat, that if the debtor "fails to pay up," the debt will be sold to someone else, adversely affecting the debtor's rights. The section is phrased in the future tense, rather than describing something that has already occurred (representing that a sale "shall cause" rather than "has caused" the loss of any rights or remedies). The Court finds that Asset's affidavit using the phrase "holder in due course" does not fit within this subsection.

■ Finally, plaintiff alleges violation of § 1692e(12), prohibiting the false representation or implication "that accounts have been turned over to innocent purchasers for value." The phrase obviously echoes the holder in due course doctrine, and a false representation that a debt collector is a "holder in due course" fits within this subsection.

### C. *Ohio Consumer Sales Practices Act.*

■ Plaintiff also seeks summary judgment on her claim under this Ohio statute. Plaintiff alleges that defendant's false statement violates R.C. § 1345.02(B)(10) and § 1345.03(B)(6). Section 1345.02 generally proscribes "unfair or deceptive practices" and is defined to include a representation "That a consumer transaction involves or does not involve a warranty, a disclaimer of warranties or other rights, remedies, or obligations if the representation is false." Section 1345.03 prohibits "unconscionable" acts and practices,

---

4. See, e.g., *Kropelnicki v. Siegel,* 290 F.3d 118, 128 (2d Cir.2002).

whether occurring before, during or after a consumer transaction. The Court is directed to several circumstances which must be considered in determining "unconscionability," all of which require knowledge (and intent) on the part of the defendant. Subparagraph (6) directs the Court to consider "Whether the supplier knowingly made a misleading statement of opinion on which the consumer was likely to rely to his detriment."

■ The Ohio courts have held that the statute applies to debt collectors. See, *Broadnax v. Greene Credit Service*, 118 Ohio App.3d 881, 893, 694 N.E.2d 167 (Ohio App.1997), *app. den.*, 79 Ohio St.3d 1483, 683 N.E.2d 787 (1997); *Celebrezze v. United Research, Inc.*, 19 Ohio App.3d 49, 50, 482 N.E.2d 1260 (1984). So, too, has the Sixth Circuit. See *Schroyer v. Frankel*, 197 F.3d 1170, 1177 (6th Cir.1999).

■ And, the statute has been applied to litigation activities. See, e.g., *Celebrezze v. United Research*, supra (debt collector's lawsuit filed in distant county violated OCSPA); and, *Gatto v. Frank Nero Auto Lease, Inc.*, 1999 WL 195664, 1999 Ohio App. LEXIS 1571 (Ohio App.1999) (obtaining default judgment and filing motion to revive that judgment subjected attorneys to the OCSPA). Thus it does not appear that the Ohio courts would apply Ohio's absolute litigation privilege to claims brought under the OCSPA.

The Act contains the same "bona fide error" defense that is contained in the FDCPA. See R.C. 1345.11(A).

■ The Court finds that defendant's "holder in due course" statement is subject to liability under R.C. 1345.02(B)(10), for the same reasons subjecting the statement to liability under 15 U.S.C. § 1692e(2) discussed above. The Court also finds that the defendant's statement is not "unconscionable" within the meaning of § 1345.03. This section is obviously aimed at curbing sales practices, and subparagraph B(6) specifically aimed at "opinions" given by a salesperson (concerning quality of merchandise, for example) which are intended to induce reliance by the consumer—to "close the sale." A statement in an affidavit filed in court is not the sort of conduct to which this section is obviously directed.

## CONCLUSION

For the foregoing reasons, the Court denies Defendant's motion for summary judgment. Defendant's motion for judgment on the pleadings (Doc. 8) and motion for a stay of proceedings (Doc. 9) are denied as moot. Defendant's motion to strike the class action allegations (Doc. 20) is denied as moot.

Plaintiff's motion for partial summary judgment (Doc. 51) and for class certification (Doc. 25) remain pending. Defendant shall file a supplemental brief limited to two issues: (1) the truth or falsity of the "holder in due course" representation in the Hilson affidavit; (2) the applicability of 15 U.S.C. § 1692k(c) and R.C. § 1345.11(A), the statutory "bona fide error" defenses. That supplemental brief shall be filed no later than thirty days from the date of this order. Responses and replies shall be filed in accordance with the timetable of Local Rule 7.2(A)(2). The Court finds that those issues are relevant to both the Plaintiff's motion for partial summary judgment and for class certification. Therefore, the Court will rule on Plaintiff's two pending motions after submission of the supplemental briefing.

The final pretrial/settlement conference remains scheduled for February 18, 2005 at 9 a.m.