**CENTURY SENIOR SERVICES,**
**a partnership, Plaintiff,**

v.

**CONSUMER HEALTH BENEFIT AS-SOCIATION, INC., a corporation, Magnolia Technologies Corporation, a corporation, and National Benefits Consultants, LLC, a limited liability company, Defendants.**

Case No. 10–61252–CIV–MARTINEZ–BROWN.

United States District Court,
S.D. Florida,
Miami Division.

March 9, 2011.

Joelle Cooperman Sharman, Rachel R. Krause, Lewis Brisbois Bisgaard & Smith LLP, Atlanta, GA, for Plaintiff.

Daniel S. Rosenbaum, Mark Gerard Keegan, Tatiana B. Yaques, Rosenbaum Mollengarden Janssen & Siracusa, PLLC, West Palm Beach, FL, for Defendants.

### OMNIBUS ORDER

JOSH E. MARTINEZ, District Judge.

THIS CAUSE came before the Court upon Plaintiff's Motion to Voluntarily Dismiss Its Interpleader Complaint Without Prejudice (**D.E. No. 21**), Plaintiff's Motion to Dismiss Magnolia's Counterclaims (**D.E. No. 22**), Plaintiff's Motion to Stay (**D.E. No. 14**) and Defendant Magnolia Technology Corporation's Motion to Compel Plaintiff ... to Deposit Interpleader Funds Pursuant to 28 U.S.C. § 1335 (**D.E. No. 18**).

### I. Factual and Procedural Background

Plaintiff Consumer Senior Services ("CSS") filed the instant interpleader action alleging that it was in possession of certain disputed commission payments. CSS's interpleader complaint alleged that there were three potential claimants—Defendant Consumer Health Benefit Association, Inc. ("CHBA"), Defendant Magnolia Technologies Corp. ("Magnolia"), and Defendant National Benefits Consultants, LLC ("NBC").

When CSS filed the instant action, Magnolia already had claims for civil theft, conversion, unjust enrichment, and civil conspiracy pending against CHBA, NBC, and Guarantee Trust Life Insurance Company ("GTLI") in state court in Broward County, Florida. Magnolia alleges that GTLI is a parent company of CSS and that GTLI is the entity that provided commission payments to Magnolia every month.

After being served in this case, Magnolia filed counterclaims against CSS and GTLI for civil theft, conversion, and unjust enrichment, as well as a claim for piercing the corporate veil between CSS and GTLI.

In a pending third case, *FTC v. Consumer Health Benefits Ass'n, et al.,* No. 10–CV–3551 ("FTC case"), a district court in the Eastern District of New York has entered an Order freezing all assets of CHBA and NBC, including those held by any other business entity, and appointing a Receiver to guard such assets. In a supplemental filing, Plaintiff CSS has attached a letter from the Receiver, Michael M. Milner, asserting a right to any money or other assets that may be due and owing to CHBA or NBC in the hands of any party to the above-captioned lawsuit. The Receiver requested that "absent a court order impounding or restraining [the funds at issue in this case]" the funds be turned over to the Receiver "pursuant to the TRO entered by the Eastern District of New York." (D.E. No. 29–1.) The Receiver also stated that he did not intend to appear or to retain counsel to appear for Defendants CHBA or NBC in this action absent further direction and an order from the Eastern District of New York.

Plaintiff CSS subsequently filed its motion to voluntarily dismiss its interpleader complaint and its motion to dismiss Magnolia's counterclaims. Defendant Magnolia has opposed both motions.

## II. Standard of Review with respect to the Rule 12(b)(6) Motion to Dismiss

"When considering a motion to dismiss, all facts set forth in the [counter-]plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.,* 225 F.3d 1228, 1231 (11th Cir.2000) (quoting *Lopez v. First Union Nat'l Bank of Fla.,* 129 F.3d 1186, 1189 (11th Cir.1997)). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007) (quoting Fed.R.Civ.P. 8; *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Thus, a plaintiff is not required to make detailed factual allegations; however, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 127 S.Ct. at 1964–65. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1965.

## III. Analysis

### A. Motion to Dismiss Counterclaim

The Court will first address the motion to dismiss Magnolia's counterclaim, because the status of the counterclaim bears on the motion for voluntary dismissal under Federal Rule of Civil Procedure 41. Plaintiff CSS has moved for dismissal on three grounds; the two grounds that are relevant before considering the motion for voluntary dismissal are CSS's contention that Florida's litigation privilege bars the counterclaim and that the counterclaim fails to state a cause of action under Rule 12(b)(6).

#### 1. *Litigation privilege*

■ Plaintiff CSS argues that Magnolia's counterclaims should be dismissed

pursuant to Florida's litigation privilege. Florida courts apply a "litigation privilege," which "affords absolute immunity for acts occurring during the course of judicial proceedings. The privilege initially developed to protect litigants and attorneys from liability for acts of defamation, but has since been extended to cover all acts related to and occurring within judicial proceedings." *Jackson v. BellSouth Telecommunications,* 372 F.3d 1250, 1274–5 (11th Cir.2004). The immunity is not all-encompassing, however. As set forth by the Florida Supreme Court,

> absolute immunity must be afforded to any act occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement or other tortious behavior such as the alleged misconduct at issue, so long as the act has some relation to the proceeding.

*Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins. Co.,* 639 So.2d 606, 608 (Fla.1994). Defendant Magnolia asserts that Magnolia became aware of Plaintiff CSS's role with respect to Magnolia's claims for civil theft, conversion, and unjust enrichment due to the interpleader complaint filed in this action. Plaintiff CSS, accordingly, argues that those claims should be barred by the litigation privilege.

■ Defendant Magnolia's counterclaim does refer at times to this interpleader action. To the extent that any of Magnolia's counterclaims are based upon the fact that CSS filed an interpleader action or upon the allegation that the factual assertions in CSS's interpleader complaint are false, those portions of the counterclaims are barred by the litigation privilege. The Court notes, however, that the core allegations of Defendant Magnolia's counterclaims do not involve actions by CSS that "ha[d] some relation to th[is] proceeding." *See Levin,* 639 So.2d at 608.

Instead, the acts that form the basis of the counterclaims largely took place before this litigation began and involve the retention of commissions that Defendant Magnolia claims should have been paid to Magnolia. *See* (D.E. No. 11). Indeed, Magnolia alleges that it made a demand for the commissions months before this litigation was filed. *Id.* The litigation privilege protects only acts that take place during the course of a judicial proceeding, not those that take place before one begins. *See Levin,* 639 So.2d at 608 (noting that a policy reason behind the litigation privilege is that "participants in judicial proceedings must be free from the fear of later civil liability as to anything said or written *during litigation*") (emphasis added) (internal citations omitted). In other words, a party may not use the litigation privilege to escape liability for an earlier tortious act simply by informing potential plaintiffs of the tortious act during the course of subsequent litigation. Only actions related to and taken during the course of litigation are protected by the privilege. *Id.* Therefore, the litigation privilege does not bar Magnolia's counterclaims involving commissions withheld before the filing of the interpleader complaint.

### 2. *Piercing the Corporate Veil*

■ Plaintiff CSS asserts that Magnolia failed to plead the necessary elements for piercing the corporate veil. A party seeking to pierce the corporate veil and prove alter ego liability must show both a blurring of corporate lines, such as ignoring corporate formalities or using a corporation for the stockholder's personal interest, and that the stockholder used the corporation for some illegal, fraudulent or other unjust purpose. *Dania Jai–Alai Palace v. Sykes,* 450 So.2d 1114, 1121 (Fla. 1984); *111 Properties v. Lassiter,* 605 So.2d 123, 125 (Fla. 4th DCA 1992); *Bark-*

*ett v. Hardy*, 571 So.2d 13, 14 (Fla. 2d DCA 1990). Magnolia alleged in its counterclaim that GTLI failed to keep CSS at an arm's length, that it blurred the lines between the two corporations, such as by having GTLI manage CSS directly and by sharing a principal place of business, and that GTLI used CSS for a fraudulent purpose by using it to mislead creditors and to shield GTLI from liability for conversion and theft. Accordingly, Magnolia has pled the necessary elements for piercing the corporate veil.

### 3. *Conversion*

■ CSS argues that Magnolia's counterclaim for conversion fails because Magnolia does not allege that it ever made a demand for the return of the commissions. *See* Fla. Stat. § 772.11 (setting forth an unmet demand for the return of the property as a requirement for conversion). Magnolia admits in its response brief that it never made a demand for the return of the commissions from CSS. Magnolia asserts that the demand made to GTLI, which it identifies as CSS's parent company and alter ego, is sufficient. The Court notes, however, that Magnolia stated separate causes of action for conversion against GTLI and CSS in its counterclaim. Proving the two corporations are alter egos will permit Magnolia to recover from the assets of both. Nonetheless, for Magnolia to state a cause of action for conversion against CSS as a separate entity, Magnolia must at least allege the elements for a conversion claim against CSS as an entity. It is undisputed that Magnolia has not stated a conversion claim against CSS, and that claim should be dismissed.

### 4. *Civil Theft*

■ CSS also asserts that Magnolia failed to state a cause of action for civil theft against CSS, because Magnolia failed to allege a demand. Florida law, however, requires that a plaintiff prove that a defendant "(1) knowingly (2) obtained or used, or endeavored to obtain or use, [plaintiff]'s property with (3) 'felonious intent' (4) either temporarily or permanently to (a) deprive [plaintiff] of its right to or a benefit from the property or (b) appropriate the property to [defendant]'s own use or to the use of any person not entitled to the property." *United Technologies Corp. v. Mazer*, 556 F.3d 1260, 1270 (11th Cir.2009) (citing Fla. Stat. §§ 772.11, 812.014). Florida law does not require a demand for the return of the money in order to state a cause of action for civil theft.

■ Although there is a certain irony to alleging that CSS had felonious intent to deprive Magnolia of its property when CSS brought an interpleader complaint regarding that property, the Court must presume the factual allegations in the counterclaim are true for the purpose of a 12(b)(6) motion. Magnolia has alleged that CSS has knowingly obtained Magnolia's commissions with felonious intent either temporarily or permanently to deprive Magnolia of the commissions or to appropriate the commissions to the use of another corporation not entitled to them. Therefore, Magnolia's counterclaim against CSS for civil theft is not due to be dismissed under Rule 12(b)(6).

### 5. *Unjust Enrichment*

■ Finally, CSS asserts that Magnolia failed to assert a claim for unjust enrichment against CSS. The prima facie case for a claim of unjust enrichment under Florida law requires 1) that he plaintiff conferred a benefit on the defendant, who has knowledge of the benefit; 2) that the defendant voluntarily accepted and retained the benefit conferred; and 3) that the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value of it to the plaintiff. *Hillman Const. Corp. v.*

*Wainer*, 636 So.2d 576, 577 (Fla. 4th DCA 1994).

 Magnolia's counterclaim alleges that "CSS derived and continues to derive substantial income and other economic benefits from Magnolia's sale of NBC's and CHBA's products." Counterclaim ¶ 114 (D.E. No. 11). However, in order to state a claim for unjust enrichment under Florida law, a party must "allege that it had *directly* conferred a benefit on the defendants." *Peoples Nat. Bank of Commerce v. First Union Nat. Bank of Florida, N.A.*, 667 So.2d 876, 879 (Fla. 3d DCA 1996) (emphasis added); *accord Extraordinary Title Services, LLC v. Florida Power & Light Co.*, 1 So.3d 400, 404 (Fla. 3d DCA 2009), *Huntsman Packaging Corp. v. Kerry Packaging Corp.*, 992 F.Supp. 1439, 1446 (M.D.Fla.1998). A benefit that a defendant gains that does not come directly from the plaintiff does not give rise to a claim for unjust enrichment. *See id.* In this case, the language of Magnolia's counterclaim does not include any allegation of a benefit conferred directly onto CSS; it claims that the benefits were "derived" from Magnolia's sales. The contracts attached by Magnolia show that any benefit CSS gained from Magnolia was likely indirectly derived through other corporations doing business with Magnolia. Accordingly, Magnolia's unjust enrichment counterclaim against CSS must be dismissed.

## B. Motion for Voluntary Dismissal

Plaintiff CSS has moved to voluntarily dismiss its interpleader complaint, and Defendant Magnolia has objected. Rule 41 of the Federal Rules of Civil Procedure provides:

> Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper. If a defendant has pleaded a counterclaim before being served with the plaintiff's motion to dismiss, the action may be dismissed over the defendant's objection only if the counterclaim can remain pending for independent adjudication.

Fed.R.Civ.P. 41(a)(2). Plaintiff CSS does not assert that Magnolia's surviving counterclaims can remain pending for independent adjudication; indeed, CSS argues that "should this Court grant the CSS' Rule 41(a)(2) motion ..., there is no basis for jurisdiction over Magnolia's counterclaim." (D.E. No. 35.)

 Instead of arguing that the counterclaim can remain pending, CSS argues that Rule 41(a)(2)'s prohibition against dismissing claims where counterclaims are pending only applies to compulsory counterclaims. CSS argues that Magnolia's counterclaims are permissive and are therefore not protected under Rule 41(a)(2). Although CSS is correct that the pending counterclaims are permissive rather than compulsory,[1] CSS has not pointed to any authority excepting permis-

---

1. Rule 13 of the Federal Rules of Civil Procedure provides that as a general rule, a party must state a counterclaim that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require adding a party over whom the Court cannot acquire jurisdiction." Fed.R.Civ.P. 13(a)(1). An exception to this general rule about compulsory counterclaims occurs, however, when "the claim was the subject of another pending action" when the action was commenced. Fed. R.Civ.P. 13(a)(2). Therefore, under Rule 13, Magnolia's counterclaims are permissive rather than compulsory counterclaims, because those claims were the subject of another pending action when this interpleader action was commenced. The count for piercing the corporate veil is not a substantive claim or cause of action; rather, it is a way to bring GTLI into this interpleader and gain access to GTLI's assets through CSS.

sive counterclaims from the Rule 41(a)(2)'s prohibition on dismissing actions with counterclaims pending that cannot remain pending following the dismissal. CSS relies on instead on authority stating that "a voluntary dismissal should be granted unless the defendant will suffer clear legal prejudice, other then the mere prospect of a subsequent lawsuit, as a result." *Pontenberg v. Boston Scientific Corp.*, 252 F.3d 1253, 1255 (11th Cir.2001) (quoting *McCants v. Ford Motor Co., Inc.*, 781 F.2d 855, 856–57 (11th Cir.1986)). This general rule does not, however, undo the specific provisions of Rule 41(a)(2). As the Court has noted, Magnolia's counterclaims are permissive rather than compulsory, and the Court does not appear to have any independent basis for jurisdiction over the counterclaims if the interpleader action is dismissed. *See L.A. Draper & Son v. Wheelabrator–Frye, Inc.*, 735 F.2d 414, 428 (11th Cir.1984) (listing factors to consider in determining whether to exercise jurisdiction over pendant state law claims and noting that "if the federal claims are dismissed prior to trial, [*United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) ] strongly encourages or even requires dismissal of the state claims."). If this interpleader complaint is dismissed, therefore, the counterclaims cannot remain pending for independent adjudication. Accordingly, a Rule 41(a)(2) dismissal over Magnolia's objection is inappropriate at this point.[2]

## C. Stay

■ Plaintiff CSS asserts that CHBA and NBC are indispensable parties to this litigation, and the case must be stayed pursuant to the stay in the FTC action. Defendant Magnolia opposes a stay. Magnolia asserts that it is the only rightful owner of the funds at issue and that CHBA and NBC have no lawful claim to the funds at all, therefore making the freeze on their assets and stay on their litigation irrelevant. Magnolia's argument goes to the merits of this case and to its ultimate resolution. Because CHBA and NBC have apparently asserted a claim to the assets in question in this interpleader action and cannot litigate their claims due to the stay in the FTC action, the interests of justice require that this action be stayed. Although the parties have not raised any abstention arguments, the Court also notes that a stay of limited duration may permit the parallel state court litigation to be resolved, simplifying the legal issues in this case and reducing the chances of inconsistent rulings. Finally, the Court notes that there is a "Second Amended Administrative Agreement" which contains an indemnity clause in which CHBA and NBC agree to indemnify CSS liabilities that arise out of their actions. (D.E. No. 11–7). It appears this indemnity provision may cause CHBA and NBC to be liable for any judgment against CSS in this case. Accordingly, a stay is also appropriate for that reason. *See, e.g., A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 999 (4th Cir.1986) (affirming a stay on the litigation of a non-debtor third party when the third party was entitled to indemnity by the debtor).

## D. Deposit into Court Registry

■ Defendant Magnolia has brought a motion to compel Plaintiff to deposit the funds at issue into the Court registry pursuant to 28 U.S.C. § 1335. Pursuant to 28 U.S.C. § 1335, the Plaintiff in an interpleader must deposit the funds at issue into the court registry. *See* 28 U.S.C.

---

**2.** Because the Court will not dismiss the interpleader complaint pursuant to Rule 41(a)(2), it is not necessary to consider Plaintiff CSS's remaining grounds for dismissing the counterclaims.

§ 1335(a)(2). Plaintiff CSS asserts that it was willing to do so at the beginning of this litigation, but it asserts that the stay in the FTC action now prevents it from doing so. The Court does not agree. The funds at issue in this interpleader action have not yet been determined to be CHBA or NBC funds. Although the stay prevents CHBA and NBC from litigating their rights to those funds, the stay does not prevent CSS from depositing the funds into the Court registry. Even the Receiver in the FTC action acknowledges that this Court may impound or restrain those funds. Accordingly, Defendant Magnolia's motion to compel the Plaintiff to comply with 28 U.S.C. § 1335 will be granted. After careful consideration, it is hereby:

**ORDERED AND ADJUDGED** that

1. Plaintiff's Motion to Voluntarily Dismiss Its Interpleader Complaint Without Prejudice (**D.E. No. 21**) is **DENIED** without prejudice.

2. Plaintiff's Motion to Dismiss Magnolia's Counterclaims (**D.E. No. 22**) is **GRANTED IN PART** and **DENIED IN PART.** The motion is granted in that Magnolia's counterclaims for conversion against CSS (Counterclaim Count V) and unjust enrichment against CSS (Counterclaim Count VII) are dismissed. The motion is denied in all other respects.

3. Defendant Magnolia Technology Corporation's Motion to Compel Plaintiff ... to Deposit Interpleader Funds Pursuant to 28 U.S.C. § 1335 (**D.E. No. 18**) is **GRANTED.** Plaintiff CSS must deposit the interpleader funds that it had in its possession when it filed this Interpleader Complaint with the court registry.

4. Plaintiff's Motion to Stay (**D.E. No. 14**) is **GRANTED.** This case shall be **STAYED** and **ADMINISTRATIVELY CLOSED** for six months. On or before **September 12, 2011,** the parties must file a status report with respect to the FTC action and Defendant Magnolia's parallel state court litigation. At that time, the parties are DIRECTED to inform the Court whether the case should remain stayed, and on what grounds, or whether it should be reopened. The parties may also move to reopen the case during the interim if such motion is appropriate.