726 So.2d 372 (1999)
Donna STUCCHIO, Appellant,
v.
Boyce Edwin TINCHER and Leslie R. Huffstetler, Appellee.
No. 97-678
District Court of Appeal of Florida, Fifth District.
February 5, 1999.
Yveline F. Paul, of Paul & Associates, P.A., Tampa, for Appellant.
Albert M. Guemmer of Carson, Guemmer and Nicholson, Tampa, for Appellee.
HARRIS, J.
Donna Stucchio was an investigator for HRS assigned to investigate a case of alleged child abuse. The attorney for the accused parent sought the personnel records of the Brooksville Police Department, Stucchio's previous employer, under Chapter 119, Florida Statutes. During a discussion with Tincher, the Chief of Police, Tincher is alleged to have orally advised the attorney that Stucchio's drug use was the reason for her termination and that she was using drugs now. Stucchio sued Tincher[1] for slander, and *373 when the judge granted summary judgment against her based on Tincher's claim of immunity, she brought this appeal. She claims first that there was an issue as to whether the statements made by Tincher were "made in connection with a judicial proceeding"[2] and second, whether the statements were made with malice.
The attorney for the accused mother in the child abuse investigation filed an affidavit in this case alleging:
3. The mother of ... did not feel it was appropriate for the HRS investigator, Donna Stucchio, to investigate her because of the mother's alleged drug use and the people she associated with, when Donna Stucchio has been forced to resign from her former job with the Brooksville Police Department because she falsified her job application concerning her use of illegal drugs.
4. In the course of the affiant's investigation and preparation of a legal defense for his client, this affiant contacted the defendant, Edward Tincher, Chief of Police of the Brooksville Police Department.
5. The affiant made a demand under Florida Statute 119 to Chief Tincher that he be allowed to inspect the personnel file of the plaintiff, Donna Stucchio. Based upon the contents in the personnel file, the affiant made a determination that Chief Tincher would be a witness in the case captioned....
6. Any information received by the affiant from Chief Tincher as to Donna Stucchio's alleged use of illegal drugs was provided to the affiant on an attorney-witness relationship concerning the credibility of Donna Stucchio in the above-mentioned case.
Our analysis should start with a determination as to what, if any, privilege exists in this case. We should start with the clear and work our way back through the murky. Suppose the defamatory statement was made at trial.
"Chief Tincher, why did Ms. Stucchio resign from her job with your department?"
"She was forced to resign because she falsified her job application concerning her use of illegal drugs. I think she is still using them."
Clearly this testimony is absolutely privileged. See Fridovich v. Fridovich, 598 So.2d 65 (Fla.1992).
Suppose the information was divulged not in court but in a pretrial deposition.
"Chief Tincher, you've been subpoenaed here for deposition and your deposition in this case is being taken under oath. Please tell us why Ms. Stucchio is no longer with your department."
Would not the same answer receive the same absolute privilege? See Fridovich, supra.
Now assume facts indicated by this case. "Chief Tincher, I appreciate your agreeing to this interview. My client's trial is coming up in a few weeks and I'm trying to learn more about the investigator that once worked for your department. Can you tell me why she is no longer with your department?" Assuming Tincher gave the same answer, what privilege exists?
The affidavit of the lawyer for the mother involved in this ongoing child abuse proceeding shows that the lawyer interviewed Tincher as a potential witness in preparation for trial. Hence, this case appears to come within the protection announced by our supreme court in Ange v. State, 98 Fla. 538, 123 So. 916, 917 (Fla.1929):
The rule of privilege as applied to statements made in the course of judicial proceedings is not restricted to trials of actions, but includes proceedings before a competent court or magistrate in the due course of law or in the administration of justice which is to result in any determination or action by such court or officer. This privilege extends to the protection of the judge, parties, counsel and witnesses, and arises immediately upon the doing of any act required or permitted by law in *374 the due course of the judicial proceedings or as necessarily preliminary thereto. (emphasis in the original).
Clearly, the law before Fridovich established an absolute privilege for a statement made "that had some relation" to a judicial proceeding. In Ange, it was a statement made in the office of the county judge by one seeking to obtain a warrant. In Robertson v. Industrial Insurance Co., 75 So.2d 198 (Fla. 1954), it was a defamatory statement contained in a letter to the insurance commissioner used to institute license revocation proceedings.
In Fridovich, the court determined that a statement made to an investigating officer preliminary to the filing of a criminal charge carried only a qualified privilege. In order to understand Fridovich, it is necessary to consider the "egregious facts" referred to by the court which caused it to limit the absolute privilege to statements made in ongoing judicial proceedings. In Fridovich, after a son killed his wealthy father, the authorities determined that the death was accidental. The other son, unhappy with his share of the estate, conspired with his other relatives to have his brother charged with first degree murder. After a stress analyzer was used to see which relative could lie better, the sister and her former husband were chosen to make false and malicious statements in order to convince the police to reopen the investigation. Notice that in Fridovich there was no pending case in which a legitimate investigation required the cooperation of witnesses familiar with relevant facts. In Fridovich, the false and malicious statements were made in order to bring about a judicial proceeding.
Fridovich determined that these facts required that it recede from Ange and Robertson, but only to the extent that "defamatory statements voluntarily made by private individuals to the police prior to the institution of criminal charges are presumptuously qualifyingly privileged."[3]Fridovich did not remove the absolute privilege when the statements are made "in the course of judicial proceedings."
Thus for an absolute privilege to exist, the question is not whether the statement was compelled or under oath; the question is merely whether the statement was made "in connection with" or "in the course of" an existing judicial proceeding. Recognizing an absolute privilege in this context does not condone false statements made by a witness during a judicial proceeding. It merely recognizes that, on balance, the absolute privilege serves a better purpose. As stated by this court in Wright v. Yurko, 446 So.2d 1162, 1164 (Fla. 5th DCA 1984):
With regard to civil suits for perjury, libel, slander, defamation, and the like based on statements made in connection with judicial proceedings, the state has long followed the rule, overwhelmingly adopted by the weight of authority, that such torts committed in the course of judicial proceedings are not actionable. (Citations omitted.) Parties, witnesses and counsel are accorded absolute immunity as to civil liability with regard to what is said or written in the course of a lawsuit, providing the statements are relevant to the litigation. The reason for the rule is that although it may bar recovery for bona fide injuries, the chilling effect on free testimony and access to the courts if such suits were allowed would severely hamper our adversary system. Remedies for perjury, slander, and the like committed during judicial proceedings are left to the discipline of the courts, the bar association, and the state.
If Judge Sharp's position were the law, witnesses would be subjected to retaliatory law suits for statements made pre-deposition. This might cause many witnesses to refuse to talk to lawyers without first being subpoenaed. Proper preparation for depositions would thus become difficult, if not impossible.
In response to the affidavit of Huffstetler that the statement was made in connection with an ongoing child abuse proceeding, Ms. Stucchio presented her affidavit stating: "I have been informed that Defendant Tincher made false defamatory and slanderous statements about me to Mr. Huffstetler [the lawyer] *375 in the presence of [his client, the one accused of child abuse]." This does not dispute Huffstetler's "testimony" that the statement was made in connection with a pending judicial proceeding and thus does not establish an issue of fact as to whether the absolute privilege exists. Stucchio makes no pretense that the statement would not be relevant in the ongoing action. The fact that Tincher did not ultimately testify in the proceedings relating to the child abuse is immaterial. Because we find that the court properly applied the absolute immunity claim in this case, the issue of malice is irrelevant.
AFFIRMED.
GRIFFIN, C.J., concurs in result only.
W. SHARP, J., dissents with opinion.
W. SHARP, J., dissenting.
The primary question in this case is whether the defamatory remarks made by Tincher to an attorney, who represented a parent in an ongoing child abuse case, are entitled to absolute immunity or privilege. See generally Restatement (Second) of Torts § 584 (1977). It was established at the summary judgment hearing that Tincher made the defamatory remarks to an attorney who interviewed him for investigative purposes. The attorney may have intended to call Tincher as a witness in the child abuse case, to impeach or damage the credibility of the HRS investigator, Stucchio. If absolute privilege applies, the remarks cannot form the basis for a civil defamation suit. If they are entitled only to a qualified privilege, then the issue of whether Tincher acted with malice or reckless disregard of the falsity of the defamatory statements remains a material issue to be resolved by the trier of fact. See Restatement (Second) of Torts § 580A cmt. d (1977).
In Fridovich v. Fridovich, 598 So.2d 65 (Fla.1992), the Florida Supreme Court receded from the absolute privilege mode and adopted a qualified privilege approach for remarks made by private persons who voluntarily reported events concerning crimes to the police. In that case, no criminal charge had been filed when the remarks were made. However, I am not convinced that factor is critical. Nor do I think a civil lawsuit context should be treated differently than a criminal one.
The Fridovich court cited to Moore v. Bailey, 628 S.W.2d 431 (Tenn.Ct.App.1981), which held that qualified privilege was only appropriate for "investigatory situations," preliminary in nature. Testimony given in court and testimony given pursuant to a subpoena remain as "encompassed within a judicial proceeding," and thus are absolutely privileged. Fridovich, 598 So.2d at 69, n. 7. However, in my view, that puts investigative interviews by attorneys of potential witnesses within the qualified privilege category.
Another limitation to absolute privilege for defamatory statements made preliminary to a judicial proceeding is that it only applies when the communication has some relation to a proceeding that is actually contemplated in good faith and under serious consideration by the witness or a possible party to the lproceeding. Restatement (Second) of Torts § 588 cmt. e (1977). In this case the remarks were not related to the child abuse case. They were intended only to impeach or disparage the character of the HRS investigator.
In Demopolis v. Peoples National Bank of Washington, 59 Wash.App. 105, 796 P.2d 426 (Wash.App.1990), an attorney made a statement in a hallway outside a courtroom falsely accusing a plaintiff of being a convicted perjurer. The court held that a qualified privilege only attached to the remarks, and that malice was a question for a jury. The court held that extrajudicial defamatory allegations relating to a party's honesty are not sufficiently "pertinent" to a judicial proceeding to clothe them with an absolute privilege when the only basis alleged for finding the allegations pertinent is that the defamed party's credibility was at issue.
In my view, Tincher is entitled only to a qualified privilege for his defamatory remarks because they were made in an investigative mode, preliminary to calling him as a witness in a judicial proceeding or deposing him under oath, and because the remarks were not pertinent to the judicial proceeding *376 which concerned the resolution of child abuse charges against other parties. I would reverse.
NOTES
[1] Her action against the attorney, Huffstetler, was handled in a separate action. See Stucchio v. Huffstetler, 720 So.2d 288 (Fla. 5th DCA 1998).
[2] This is an interesting position since in her complaint against Tincher, plaintiff alleges "these expressly malicious statements [were made] in order to influence the investigation of a case plaintiff was involved with as a protective investigator."
[3] Fridovich, 598 So.2d at 69.