LEVINE, J.
The issue presented is whether the trial court was correct in granting summary *6 judgment on appellants’ claim of defamation and tortious interference based on the litigation privilege. We find that the trial court correctly granted summary judgment, and we affirm.
The claim of defamation and tortious interference brought in this case emanates from another underlying case in which DelMonico, the appellant here, filed a complaint against Donovan Marine, Inc., and its employee, Tony Crespo. DelMonico alleged that Crespo told several people that DelMonico supplied prostitutes to the owner of a company previously doing business with Donovan Marine as their method to take away business from Donovan and bring it to DelMonico. Appellee Traynor, while acting as defense counsel for Donovan Marine, published to DelMonico’s ex-spouses and business peers the same allegation that DelMonico hired prostitutes to get business and that DelMonico faced prosecution for prostitution. Appellants filed claims of action for defamation and tortious interference against the appellees as a result of these statements.
The complaint alleged that the appellee had contacted DelMonico’s ex-wife and told her that DelMonico had taken a customer away from Donovan by enticing the purchasing agent with prostitutes. The appellee also contacted a former employee of DelMonico’s company, MYD Marine Distributor, and stated to him that Del-Monico’s method to take an account was to supply a prostitute to the owner. The appellee encouraged the former employee to provide additional examples of DelMoni-co’s “unethical business practices.” The appellee contacted the former owner of a business and stated that DelMonico was “being prosecuted for prostitution.” The appellee also contacted another ex-wife of the appellant and stated that DelMonico was being prosecuted for using prostitution to get business. The appellee also contacted principals of other marine services companies about the prosecution of DelMonico for procuring prostitutes and growing his business in this manner. The appellee stated that he was part of the prosecution of DelMonico for procuring prostitutes and illegal business dealings. Subsequently, New Nautical, a manufacturer with whom MYD Marine Distributor had an exclusive contract, received calls from companies stating they no longer wanted to purchase products from MYD Marine Distributor.
All of the above statements made by the appellee occurred during potential witness interviews, were performed by the appel-lee in his role as an attorney, and were made purportedly for the purpose of defending his client during pending and active litigation. The appellee’s comments and statements were made in connection with, and during the course of, an existing judicial proceeding. The appellee was acting as defense counsel for Donovan Marine in litigation in which DelMonico asserted that Donovan’s employee defamed Del-Monico by making accusations “about prostitution.” The appellee denied saying that DelMonico was being prosecuted for prostitution but did maintain that all communications he had with the ex-wives and employees were done in furtherance of and as part of his work as an attorney defending his client.
The trial court granted summary judgment based upon absolute immunity conferred by the litigation privilege. Our standard of review of this order granting summary judgment is de novo. Palm Beach Pain Mgmt., Inc. v. Carroll, 7 So.3d 1144, 1145 (Fla. 4th DCA 2009). Whether allegedly defamatory statements are covered under absolute privilege is a question of law to be decided by the court. Resha v. Tucker, 670 So.2d 56, 59 (Fla.1996); *7 Cassell v. India, 964 So.2d 190 (Fla. 4th DCA 2007).
“[Ajbsolute immunity must be afforded to any act occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement or other tortious behavior ... so long as the act has some relation to the proceeding.” Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins. Co., 639 So.2d 606, 608 (Fla.1994); see also Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole, 950 So.2d 380 (Fla.2007). “The falsity or maliciousness of the alleged statements is irrelevant to this analysis.” Ross v. Blank, 958 So.2d 437, 441 (Fla. 4th DCA 2007); see also Levin, 639 So.2d at 607.
Because the statements complained of were made by the appellee while he was acting as defense counsel in the underlying litigation, and the statements bore “some relation” to the proceeding, they were absolutely privileged as a matter of law. Levin, 639 So.2d at 608; see also Fernandez v. Haber & Ganguzza, LLP, 30 So.3d 644 (Fla. 3d DCA 2010) (concluding that the actions of the law firm in preparing and filing a notice of lis pen-dens were privileged because they occurred during the course of a judicial proceeding); Stucchio v. Tincher, 726 So.2d 372 (Fla. 5th DCA 1999) (concluding that statements made by lawyer during interview of potential witness in preparation for trial were absolutely privileged). Interviewing a witness in preparation for and connected to pending litigation is absolutely privileged. Stucchio, 726 So.2d at 373.
The rule of absolute immunity extends to the parties, judges, witnesses, and counsel involved and related to the judicial proceedings. Levin, 639 So.2d at 608. The reason for the rule of absolute immunity is that “the public interest of disclosure outweighs an individual’s right to an unimpaired reputation” and “participants in judicial proceedings must be free from the fear of later civil liability as to anything said or written during litigation so as not to chill the actions of the participants in the immediate claim.” Id. The Florida Supreme Court concluded that there would be a “chilling effect” on the adversary system without absolute immunity. Id.
The appellee should receive the same absolute immunity in questioning potential witnesses before their appearance at deposition or in the courtroom, as if the questioning were during a formalized judicial proceeding. The Florida Supreme Court merely requires that the “act” have “some relation to the proceeding.” Id. Clearly, speaking to potential witnesses during the pendency of litigation is of “some relation to the proceeding.” If we were to find that absolute immunity be conferred on the participants only at formalized hearings or court proceedings, we would have the unintended consequence of attorneys not being able to question witnesses in preparation for eventual formalized proceedings without fear of civil liability. “[Witnesses would be subjected to retaliatory law suits for statements made pre-deposition. This might cause many witnesses to refuse to talk to lawyers without first being subpoenaed. Proper preparation for depositions would thus become difficult, if not impossible.” Stucchio, 726 So.2d at 374. Attorneys would be subject to the same chilling effect if their work is outside of the courtroom, but has “some relation to the proceeding.”
Other jurisdictions have recognized an even more expansive interpretation of “some relation to the proceeding,” applying the absolute privilege doctrine to out-of-court communications occurring without the presence of both counsel and even *8 going so far as to apply the doctrine to communications that occur before suit is even initiated. See, e.g., Jackson v. Bell-South Telecomms., 372 F.3d 1250, 1276 (11th Cir.2004) (stating that “events taking place outside the courtroom during discovery or settlement discussions are no less an integral part of the judicial process, and thus deserving of the protection of the [litigation] privilege, than in-court proceedings”) (quoting Hoover v. Van Stone, 540 F.Supp. 1118, 1122 (D.Del.1982)); Pettitt v. Levy, 28 Cal.App.3d 484, 104 Cal.Rptr. 650, 654 (1972) (stating that the absolute privilege doctrine “extends to preliminary conversations and interviews between a prospective witness and an attorney if they are some way related to or connected with a pending or contemplated action”) (citation omitted); Jones v. Coward, 193 N.C.App. 231, 666 S.E.2d 877, 880 (2008) (holding that an attorney’s statement to a potential witness preliminary to trial is absolutely privileged, provided the statement is relevant and is related to the subject matter of the controversy); Russell v. Clark, 620 S.W.2d 865, 868 (Tex.Civ.App.1981) (justifying the extension of the absolute privilege doctrine to out-of-court communications made by attorneys preliminary to a judicial proceeding because an attorney “must seek discovery of evidence, interrogate potential witnesses, and often resort to ingenious methods to obtain evidence” but “must not be hobbled by the fear of reprisal”); Pratt v. Nelson, 164 P.3d 366, 376 (Utah 2007) (interpreting the term “judicial proceeding” “broadly” to include certain pretrial statements and “communication [] preliminary to a proposed judicial proceeding”) (citation omitted).
The Florida Supreme Court has also recognized that there could be a remedy if there was misconduct. There could be “discipline of the courts, the bar association, and the state.” Levin, 639 So.2d at 608 (citation omitted). Additionally,
a trial judge has the inherent power to do those things necessary to enforce its orders, to conduct its business in a proper manner, and to protect the court from acts obstructing the administration of justice. In particular, a trial court would have the ability to use its contempt powers to vindicate its authority and protect its integrity....
Id. at 608-09.
Without the shield of absolute immunity, our legal system would be further diminished by attorneys worrying, consciously or not, whether they will be made subject to litigation for merely inquiring into areas deemed controversial, unfair, or unjust by the opposing side. Counsel must be able to inquire unfettered into areas with some relation to the pending litigation, without the concern of further litigation hanging over them like a “sword” and having that “sword” impede the advocacy of counsel.

Affirmed.

DAMOORGIAN, J., concurs.
WARNER, J., dissents with opinion.